UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANJA SZELINSKI-D'MARIANO,

        Plaintiff,

v.

Lake Village of Auburn Hills, L.L.C., a
Michigan limited liability corporation,
Lake Village of Auburn Hills Real
Equities Mgmt, L.L.C., a Michigan
limited liability corporation, and
Wynnestone Communities Corporation,
a Michigan corporation,

        Defendant.
_____/

Case No.

Hon.

Magistrate

Steve Tomkowiak (P-40042)
LAW OFFICE OF STEVE TOMKOWIAK
Counsel for Plaintiff
29777 Telegraph Road, Suite 2500
Southfield, Michigan 48034
(248) 543-1600
Fax: (248) 543-1800
Email: stomk@sbcglobal.net
_____/

### COMPLAINT FOR INJUNCTIVE, DECLARATORY AND OTHER RELIEF

      Plaintiff Anja Szelinski-D'Mariano, by her attorney, Steve Tomkowiak, and for her Complaint against Defendants Lake Village of Auburn Hills, L.L.C., Lake Village of Auburn Hills Real Equities Mgmt, L.L.C., and Wynnestone Communities Corporation, states as follows:

## *General Allegations*

### *The Parties*

1. Plaintiff Anja Szelinski-D'Mariano ("Szelinski-D'Mariano") is a natural person, and resident of the City of City of Auburn Hills, County of Oakland, and State of Michigan.

2. Defendant Lake Village of Auburn Hills, L.L.C., on information and belief, is a Michigan limited liability corporation with Gilbert Silverman serving as its resident agent and with its principal place of business or registered office located at 32100 Telegraph Road, Suite 250, Bingham Farms, MI 48025.

3. Defendant Lake Village of Auburn Hills Real Equities Mgmt, L.L.C., on information and belief, is a Michigan limited liability corporation with either (i) Gilbert Silverman serving as its resident agent and with its principal place of business or registered office located at 32100 Telegraph Road, Suite 250, Bingham Farms, MI 48025; or (ii) Thomas E. Carnaghi of Amurcon Corporation, serving as its resident agent and with its principal place of business or registered office located at 30215 Southfield Road, Suite 200, Southfield, MI 48076. On information and belief, Amurcon Corporation also maintains an office at 32100 Telegraph Road, Suite 250, Bingham Farms, MI 48025.

4. Defendant Wynnestone Communities Corporation, on information and belief, is a Michigan corporation doing business under numerous assumed names including, but not limited to, Wynnestone Communities and Amurcon, with its principal place of business or registered office, on information and belief, located at 32100 Telegraph Road, Suite 220, Bingham Farms, MI 48025 c/o Gilbert Silverman.

5.      On information and belief, Defendants Lake Village of Auburn Hills, L.L.C., Lake Village of Auburn Hills Real Equities Mgmt, L.L.C., and/or Wynnestone Communities Corporation (hereinafter referred to collectively as "Defendant" or "Lake Village"), own, operate and/or manage an apartment complex located at 100 Lake Village Blvd., Auburn Hills, MI.

### *Jurisdiction and Venue*

6.      This case involves handicap discrimination in violation of the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3604 ("FHAA").

7.      The FHAA makes it unlawful to discriminate against "any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with a dwelling" on the basis of that person's handicap. 42 U.S.C. § 3604(f).

8.      A "handicapped person" is defined broadly in the FHAA as one who has a physical or mental impairment, which substantially limits such person's major life activities, has a record of having such impairment, or is regarded as having such an impairment. 42 U.S.C. § 3602(h).

9.      Discrimination is defined in the FHAA to include refusing "to make reasonable accommodations in rules, policies, practices, or services" when necessary to afford such person with a handicap an "equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3).

10.     The Court has jurisdiction of this action, pursuant to 42 U.S.C. § 3613, and as a federal question arising under the laws of the United States, pursuant to 28 U.S.C. § 1331.

11.     This Complaint also arises under the Michigan Persons with Disabilities Civil Rights Act, M.C.L. §§ 37.1501-37.1507 ("PWDCRA").

12. The PWDCRA, like the FHAA, prohibits discrimination in the refusal to make reasonable accommodations for handicapped residents of buildings in need of such accommodations.

13. The Court has pendent jurisdiction of Plaintiff's PWDCRA claim.

14. There are no administrative prerequisites to the filing of this action by Plaintiff.

15. Additionally, Plaintiff's complaint is timely, as filed within the applicable two- and three-year statutes of limitations periods applicable to claims under the FHAA and the PWDCRA, respectively, following Defendant's most recent violations or continued violations of the FHAA and the PWDCRA.

16. Venue is appropriate, under 28 U.S.C. § 1391, since the substantial part of the events giving rise to this action occurred in this District, Defendant and Szelinski-D'Mariano each reside in this District, Defendant conducts business in this District, and the residential rental property that is the subject of this action is located in this District.

*Szelinski-D'Mariano's Tenancy*

17. Szelinski-D'Mariano is a tenant at the Lake Village of Auburn Hills apartment complex, located at 100 Lake Village Blvd., Auburn Hills, MI 48326.

18. Szelinski-D'Mariano occupies Apartment Unit 204, 660 Lake Village Blvd., Auburn Hills, MI 48326.

19. On information and belief, Defendant owns, operates and/or manages the Lake Village of Auburn Hills apartment complex.

*Szelinski-D'Mariano's Disabilities*

21.     Szelinski-D'Mariano is an Air Force veteran, having served in the Air Force from August 1980 to August 2000.

22.     Szelinski-D'Mariano 20-year service in the Air Force included service in the Gulf War Era.

23.     Among other disabilities, Szelinski-D'Mariano suffers from chronic knee pain and severe lower back pain due, including sciatica.

24.     Due to her disabilities, Szelinski-D'Mariano was granted 100% disability status by the Department of Veterans Affairs (VA) as of October 2006.

25.     In April 2010, Szelinski-D'Mariano was also found by the Social Security Administration (SSA) to be disabled as of March 2007.  According to the SSA, Szelinski-D'Mariano "has the following severe impairments: degenerative disk disease; cognitive disorder; and depressive disorder".

26.     As to degenerative disk disease, the SSA found the evidence showed that Szelinski-D'Mariano had a long history of low back pain.  The evidence consisted of, among other things, "an x-ray show[ing] degenerative disc at the cervical and lumbar spine; [a]n MRI" . . . "showing L3-L4 central disc protrusion and hypertrophy of flavus ligament with central spine canal stenosis and left uniform narrowing"; and "L4-L5 diffuse disc bulging, hypertrophy of flavus ligaments and right facet hypertrophy with resulting mild left neuroforaminal narrowing and mild central spine canal stenosis." (citations omitted).

27.     Szelinski-D'Mariano also suffers from severe degenerative arthritis of her knee.

28.     Szelinski-D'Mariano has undergone knee replacement surgery.

29.    Szelinski-D'Mariano has difficulty lifting her leg to walk due to her sciatic nerve and back.

30.    As a result of these medical conditions, Szelinski-D'Mariano is mobility impaired, rendering her unable to walk safely for more than a very short distance.

### *Defendant's Denial of a Handicap Parking Accommodation*

31.    Szelinski-D'Mariano has fallen frequently, on almost a monthly basis, when walking.

32.    Szelinski-D'Mariano has fallen while walking to and from her apartment unit to the parking lot at the Lake Village of Auburn Hills apartment complex, resulting in injuries.

33.    Szelinski-D'Mariano needs the closest parking space nearest her rental unit to minimize pain and falls.

34.    On several occasions, Szelinski-D'Mariano informed Defendant of her disabilities and of her request that the closest parking space nearest her apartment unit be reserved or assigned to her, for reasons of safety, so that she will not have to walk very far to get to her apartment unit.

35.    On or about April 22, 2011, Szelinski-D'Mariano requested from Defendant a reasonable accommodation in regards to the availability of handicap parking due to her disability:

> I, Anja Szelinski-D'Mariano, residing in 660 Lake Village Dr. Apt 204; am requesting that the handicap parking problem be looked into. There are not enough parking spots for all the handicap occupants in our building, so I am requesting additional parking be implemented for all the apartments that require them. And send out a letter that one car per apartment would get a handicap parking spot. Or have the spot painted with the apartment no. on it. I don't want to fighting with occupants visitors for a spot. And the Explorer van is still taking up

> 2 parking spots (unless I get to park there first then she still takes up 2 parking spots one handicap and one not), which is against the law.
>
> Thank you

36. Defendant did not respond to Szelinski-D'Mariano's parking accommodation request until approximately May 30, 2011, when Defendant's employees or agents orally stated that the signs were outdated.

37. On about July 4, 2011, Szelinski-D'Mariano was told that signs were received but not yet installed by management.

38. Szelinski-D'Mariano was later informed that Defendant had to order "posts".

39. As a result of these delays, Szelinski-D'Mariano, on August 1, 2011, sent a second request for a reasonable accommodation in regards to the availability of handicap parking due to her disability:

> To Whom It May Concern
>
> I, Anja Szelinski-D'Mariano, residing in 660 Lake Village Dr. Apt 204; am requesting that the handicap parking problem be looked into again. There are not enough parking spots for all the handicap occupants in our building or the next building over, so I am requesting additional parking be implemented for all the apartments that require them. And <u>send out a letter that one car per apartment would get a handicap parking spot. Or have the spot painted with the apartment no. on it</u>. I don't want to [be] fighting with occupants visitors for a spot. Because if I go shopping who is going to help me carry my purchases in from several parking spots down at the ends of the buildings, why not give me your phone no.s so I can call you for assistance. This is the second letter I have turned in. The week of Memorial day you said the signs were ordered, and at the end of June you said you received them but had to put them up. I have counted 6 handicap cars (not including the green van) in my area this last week and only 3 parking spots. I cannot leave in fear of not getting a spot and having to walk near the mailbox or down by the other end of the next building, and what if I should fall, then what? It's like being a captive in my own house. (emphasis in original)
>
> Thank you.

40.     Szelinski-D'Mariano received no response, either oral or written, to her request of August 1, 2011.

41.     As a result of these delays, refusals, or both, Szelinski-D'Mariano, on September 1, 2011, sent a third request for a reasonable accommodation in regards to the availability of handicap parking due to her disability.

42.     This request was sent to Shannon Smith, the "Resident Complaint" person for Defendant:

> Shannon Smith
>
> I was wondering if you could explain to me why you do not allow reasonable accommodation of your parking policy for your disabled residents. Or assign parking spots so there would not be a problem for residents having adequate parking per apartment. For some apartments have more than 2 or 3 cars, park all there cars close to the doors and only using one, maybe two if there are two adults and the ones that have only one car have to walk to areas that are unsafe for residents especially the women or disabled. This problem has been brought to the attention of the management, with them having a deaf ear to the needs of their residents. And when we have to park far from the door the lighting is bad that accidents can happen (which I have fallen twice ~ once a week after my surgery because of inadequate handicap parking) or the safety of the residents are in jeopardy. So please explain/reply why you do not allow reasonable accommodation of your parking policy in writing (by email).
>
> Thank you

43.     Similar to her August 1. 2011 request, Szelinski-D'Mariano received no response, either oral or written, to her request of September 1, 2011.

44.     To date, Szelinski-D'Mariano has been largely unable to park close to her apartment unit, as the handicap parking spaces closest to her apartment unit are used by tenants, guests of tenants and other third-parties unrelated to apartment complex tenants.

45.     Further, many of the vehicles permitted by Defendant to occupy the handicap parking spaces do not have handicap placards or license plates.

8

### *Injuries and Damages*

46.     Because of Defendant's failure and refusal to grant her request for a reasonable accommodation in terms of parking, Szelinski-D'Mariano on several occasions has fallen and incurred personal injuries, pain and suffering. These injuries include, but are not necessarily limited to, bone fractures or fragments in her back, tendonitis on her finger, injuries to her right knee, and aggravation of existing medical conditions.

47.     Szelinski-D'Mariano has incurred economic losses and damages, including, but not limited to, having to pay others to run errands for her and to have others transport her from and to her apartment unit.

48.     Szelinski-D'Mariano has also suffered emotional distress injuries and damages, such as, embarrassment; humiliation; anxiety; loss of personhood and civil rights; and pain and suffering, because of Defendant'' discriminatory actions. These emotional distress injuries and damages include, but are not limited to, the loss of the peaceful and quiet enjoyment of her home; the denial of the privileges and opportunities to the use and enjoyment of her apartment unit and common areas.

49.     Moreover, the acts, conduct and/or omissions of Defendant were and continue to be intentional, malicious, and in wanton or reckless disregard of the rights and feelings of Szelinski-D'Mariano, entitling Szelinski-D'Mariano to additional awards of punitive and/or exemplary damages.

## COUNT I
### *VIOLATION OF THE FHAA*

50. Paragraphs 1 through 49 of the Complaint are incorporated and restated as if set forth fully herein.

51. Szelinski-D'Mariano at all relevant times was handicapped under the terms of the FHAA.

52. Defendant violated, and is continuing to violate, the FHAA, by refusing and continuing to refuse, upon repeated requests, to make reasonable accommodations for Szelinski-D'Mariano in the rules, policies, practices or services concerning parking at the Lake Village of Auburn Hills.

53. Similarly Defendant has violated, and is continuing to violate the FHAA by refusing and continuing to refuse, upon repeated requests, to make reasonable accommodations for Szelinski-D'Mariano in its management services and practices with respect to handicapped parking.

54. Such an accommodation, or the mere continuation of an existing accommodation, is necessary to afford Szelinski-D'Mariano an equal opportunity to use and enjoy her apartment unit as non-handicapped occupants in the apartment complex.

55. The requested accommodation, or the request for the mere continuation of an existing accommodation, will not in any way cause an undue administrative burden or expense to Defendant.

56. As a direct and proximate result of Defendant's actions and practices in violation of the FHAA, Szelinski-D'Mariano has incurred compensable economic and emotional distress

damages, and personal injuries and damages, including, but not limited to, pain and suffering. Szelinski-D'Mariano is also entitled to an award of punitive and/or exemplary damages.

### COUNT II
### VIOLATION OF THE PWDCRA

57. Paragraphs 1 through 56 of the Complaint are incorporated and restated as if set forth fully herein.

58. Szelinski-D'Mariano at all relevant times was handicapped under the terms of the PWDCRA.

59. Defendant has violated and is continuing to violate the PWDCRA, by refusing and continuing to refuse, upon repeated requests, to make reasonable accommodations for Szelinski-D'Mariano concerning handicapped parking.

60. The requested accommodation, or the request for the mere continuation of an existing accommodation, is necessary to afford Szelinski-D'Mariano an equal opportunity to use and enjoy her apartment unit as non-handicapped occupants.

61. The requested accommodation will not cause any undue administrative burden or expense to Defendant.

62. As a direct and proximate result of Defendant's actions and practices in violation of the PWDCRA, Szelinski-D'Mariano has incurred compensable economic, pain and suffering, and emotional distress damages and injuries, and is also entitled to an award of punitive and/or exemplary damages.

63. As a direct and proximate result of Defendant's actions and practices in violation of the PWDCRA, Szelinski-D'Mariano has incurred compensable economic and emotional

distress damages, and personal injuries and damages, including, but not limited to, pain and suffering. Szelinski-D'Mariano is also entitled to an award of punitive and/or exemplary damages.

WHEREFORE, for all of the above reasons, Plaintiff Szelinski-D'Mariano respectfully requests that the Court grant the following relief against Defendant:

(A) Order Defendant to temporarily, preliminarily and permanently provide and maintain the handicap parking space previously available to Szelinski-D'Mariano at the location directly across the street from her apartment unit;

(B) Temporarily, preliminarily and permanently enjoin Defendant, and all officers, directors, employees, attorneys, agents, and assigns of Defendant, from any other acts or practices of handicap discrimination against other occupants or guests in the ownership, operation and management of the apartment complex, with appropriate notification being provided to all occupants of the complex;

(C) Award actual and compensatory damages to compensate Plaintiff for her economic losses and damages, personal injuries, pain and suffering, and noneconomic injuries, such as emotional distress, loss of civil rights, and humiliation and embarrassment caused by the handicap discrimination of Defendant, in an amount to be proven at trial;

(D) Grant Plaintiff an award of punitive and/or exemplary damages as a result of Defendant's deliberate, intentional, willful and flagrant handicap discrimination, in an amount that reflects the dual purposes of punishment and deterrence;

(E) Grant Plaintiff an award of attorneys fees, costs and interest incurred in bringing this action;

(F) Grant Plaintiff pre-judgment and post-judgment on all awards rendered against Defendant; and

(G) Grant such other and additional relief that the Court finds just and appropriate under the circumstances.

        Respectfully submitted,

        LAW OFFICE OF STEVE TOMKOWIAK
        Counsel for Plaintiff

        By: */s/ Steve Tomkowiak* (P-40042)
        29777 Telegraph Road, Suite 2500
        Southfield, Michigan 48034
        (248) 543-1600
        Fax: (248) 543-1800
        Email: stomk@sbcglobal.net

Dated: February 15, 2012